# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLINA ZAMORA MAGANA,<br><br>Plaintiff,<br><br>v.<br><br>ARCHER DANIELS MIDLAND COMPANY dba ADM GOLDEN PEANUT,<br><br>Defendant.<br>_____/ | Case No. 1:20-cv-00578-NONE-SKO<br><br>**FINDINGS AND RECOMMENDATIONS THAT PLAINTIFF'S MOTION FOR LEAVE TO AMEND COMPLAINT BE GRANTED AND THE CASE REMANDED**<br><br>**TWENTY-ONE (21) DAY DEADLINE**<br><br>(Doc. 21) |

## I. INTRODUCTION

On March 10, 2021, Plaintiff Carolina Zamora Magana ("Plaintiff") filed a "motion for leave to amend complaint" (the "Motion"). (Doc. 21.) Defendant Archer Daniels Midland Company dba ADM Golden Peanut ("Defendant") filed an opposition to the Motion on March 31, 2021. (Doc. 22.) On April 12, 2021 the undersigned continued the hearing and ordered supplemental briefing on the Motion, which was filed by Plaintiff and Defendant on April 27, 2021, and May 5, 2021, respectively. (Docs. 26 & 29.) The undersigned reviewed the parties' papers and all supporting material and found the matter suitable for decision without oral argument pursuant to U.S. District Court for the Eastern District of California's Local Rule 230(g). (Doc. 34.) The hearing, which had been continued to May 26, 2021, was therefore vacated. (*See id.*)

For the reasons set forth below, it is RECOMMENDED (1) that the Motion be GRANTED to join Elizabeth Hurtado as a defendant and to add a claim against her for invasion of privacy by

means of intrusion into private affairs, and (2) upon filing of the amended complaint, that the case be REMANDED.

## II.   BACKGROUND

**A.   Factual Background[1]**

Plaintiff was employed by Defendant as a maintenance worker and cleaner at its location in Modesto, California. (Doc. 1-1, ¶ 19.) On July 29, 2019, while working the night shift, Plaintiff slipped and fell, injuring her head. (*Id.* ¶ 21.) She complained of pain as an "8/10," dizziness, nausea, and feeling faint. (*Id.*) Plaintiff immediately notified her supervisor that she was not feeling well and provided a "full incident report." (*Id.* ¶ 22.) The supervisor "demanded that Plaintiff not seek medical treatment or call for an ambulance." (*Id.*) Plaintiff "agreed not to call the ambulance because she was unaware and never made aware of any workers' compensation insurance held by Defendant," but she "demanded to be taken to a doctor to have her injuries examined." (*Id.*) Defendant nevertheless "forced" Plaintiff to work the remainder of her eight-hour shift before receiving any medical forms or being taken to a doctor. (*Id.* ¶ 23.)

The following day, July 30, 2019, Plaintiff was taken to the doctor by another employee of Defendant, "Elizabeth (Last Name Unknown)." (Doc. 1-1, ¶ 24.) Elizabeth informed Plaintiff that "if the doctor asked if she wanted a prescription for pain killers, [she] was to say, 'no,'" and "even accompanied Plaintiff inside of the examination room to make sure she complied with this directive." (*Id.*) Plaintiff wished to receive a "block injection" but was told not to ask for one. (*Id.*) Elizabeth then asked the doctor to conduct a drug test on Plaintiff, without giving a reason. (*Id.* ¶ 25.) Upon leaving the doctor's office, Elizabeth drove Plaintiff to a pharmacy and bought over-the-counter pain medication with Defendant's corporate credit card, having received authorization to do so by Defendant's Director of Operations. (*Id.* ¶ 26.)

That night, Plaintiff's symptoms got worse, despite having taken the pain medication. (Doc. 1-1, ¶ 27.) She presented to the emergency room, where tests and X-rays "revealed that her injury was more severe than previously thought." (*Id.* ¶ 27.) Plaintiff was provided analgesics for

---

[1] The factual background summarizes Plaintiff's allegations as set forth in the complaint, which is currently the operative pleading. (Doc. 1-1.)

2

pain and was advised to restrict her movements.  (*Id*.)

On July 31, 2019, she informed Elizabeth of her emergency room visit and that she had been advised to "return on restricted work duty until further medical treatment was completed." (Doc. 1-1, ¶ 28.)  The next day, August 1, 2019, Elizabeth asked Plaintiff to come into work, but Plaintiff declined to do so due to the pain medication she had been taking for her injury.  (*Id*. ¶ 29.)

Later that month, Elizabeth informed Plaintiff that she had failed her drug test and that she had the option of entering an Employee Assistance Program ("EAP") provided by Defendant. (Doc. 1-1, ¶ 30.)  Plaintiff agreed to the EAP classes but, unfortunately, Defendant was unable to find an EAP counselor that conducted sessions in Spanish.  (*Id*. ¶ 31.)  Elizabeth provided Plaintiff the name of a counselor who did not speak Spanish, and Plaintiff made an appointment with the counselor on August 21, 2019.  (*Id*. ¶¶ 31–32.)  Following the appointment, the counselor informed Plaintiff that she was "satisfied with Plaintiff's progress after one session and told her that this process would be short."  (*Id*. ¶32.)  That next day, August 22, 2019, Elizabeth summoned Plaintiff to Defendant's office where she was fired "without further explanation."  (*Id*. ¶ 33.)

**B.     Procedural Background**

After filing a charge with the California Department of Fair Employment and Housing and obtaining a Right to Sue letter (Doc. 1-1, ¶¶ 35), Plaintiff filed a complaint against Defendant in San Francisco County Superior Court on February 21, 2020.  (Doc. 1-1.)  The complaint alleges causes of action under California law for disability and national origin discrimination, failure to prevent said discrimination, wrongful termination, and retaliation.  (*Id*.)  On March 30, 2020, Defendant removed the lawsuit to federal court on grounds of diversity jurisdiction.  (Doc. 1.) The action was transferred to this Court pursuant to stipulation on April 23, 2020.  (Docs. 13 & 14.)

The parties participated in a scheduling conference with the undersigned on July 30, 2020. (Doc. 9.)  The undersigned issued a scheduling order on July 31, 2020, which provides that "[a]ny motions or stipulations requesting leave to amend the pleadings must be filed by no later than December 16, 2020."  (Doc. 20, 2:22–23.)  Plaintiff filed the instant Motion on March 10, 2021,

3

seeking to amend the complaint to join Elizabeth Hurtado and to add a cause of action for invasion of privacy by means of intrusion into private affairs against her.[2]  (Doc. 21.)

### III.   DISCUSSION

As the Motion was filed after the amendment deadline, the undersigned will first determine whether Plaintiff has demonstrated good cause pursuant to Federal Rule of Civil Procedure 16. *See United States ex rel. Terry v. Wasatch Advantage Grp.*, LLC, 327 F.R.D. 395, 403 (E.D. Cal. 2018).  (*See also* Doc. 20 at 2:25–28.)

**A.   Plaintiff Has Shown Good Cause to Modify the Schedule Pursuant to Rule 16**

   **1.   Legal Standard**

Federal Rule of Civil Procedure 16(b) provides that the district court must issue a scheduling order that limits "the time to join other parties, amend the pleadings, complete discovery, and file motions."  Fed. R. Civ. P. 16(b)(1)–(3).  A scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The "good cause" standard "primarily considers the diligence of the party seeking the amendment."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).  To establish good cause, the party seeking the modification of a scheduling order must generally show that even with the exercise of due diligence, they cannot meet the requirement of that order.  *Id*.  The prejudice to other parties, if any, may be considered, but the focus is on the moving party's reason for seeking the modification.  *Id*.  If the party seeking to amend the scheduling order fails to show due diligence, the inquiry should end, and the court should not grant the motion to modify.  *Zivkovic v. S. Cal. Edison, Co.*, 302 F.3d 1080, 1087 (9th Cir. 2002) (citing *Mammoth Recreations*, 975 F.2d at 609).

---

[2] Although Plaintiff's proposed amended complaint included claims against Ms. Hurtado for discrimination and retaliation and a claim for invasion of privacy against Defendant (*see* Doc. 21 at 17–21, 22), neither the Motion nor the supplemental briefing in support thereof addresses the proprietary of those claims.  The undersigned therefore concludes that Plaintiff has <u>abandoned</u> its intention add these claims against Ms. Hurtado and Defendant.  *See Stichting Pensioenfonds ABP v. Countrywide Fin. Corp.*, 802 F. Supp. 2d 1125, 1132 (C.D.Cal.2011) ("failure to respond in an opposition brief to an argument put forward in an opening brief constitutes waiver or abandonment in regard to the uncontested issue"); *In re TFT–LCD (Flat Panel) Antitrust Litig.*, 586 F. Supp. 2d 1109, 1131 (N.D. Cal. 2008) (granting a motion to dismiss a claim without leave to amend after noting that plaintiffs' opposition did not address defendants' arguments regarding the claim, and that plaintiffs had therefore abandoned the claim).  Thus, the undersigned's findings and recommendation are limited to Plaintiff's request to join Elizabeth Hurtado and to plead an invasion of privacy claim solely against her.

"Relevant inquiries [into diligence] include: whether the movant was diligent in helping the court to create a workable Rule 16 order; whether matters that were not, and could not have been, foreseeable at the time of the scheduling conference caused the need for amendment; and whether the movant was diligent in seeking amendment once the need to amend became apparent." *Wasatch Advantage Grp.*, 327 F.R.D. at 404 (internal quotation marks and citation omitted) (alteration in original).

### 2. Analysis

Plaintiff bases its request to allege a claim for invasion of privacy by means of intrusion into private affairs against and to join Elizabeth Hurtado, whom she alleges is the Environmental Health and Safety Manager for Defendant, on information it received in discovery from Defendant on February 12, 2021.[3] (Doc. 21 at 5–6; Doc. 26 at 3.) On that date, Defendant served responses to Plaintiff's requests for admission, wherein it "denie[d] that it required Ms. Hurtado to accompany Plaintiff into the examination room." (Doc. 26 at 17–18.) Plaintiff contends that, prior to receiving Defendant's denial, she believed that Ms. Hurtado was acting under the direction of Defendant in entering the examination room with her. (Doc. 21 at 3; Doc. 26 at 3.) Plaintiff now believes, based on Defendant's denial, that Ms. Hurtado was acting in her personal capacity and is subject to individual liability for the invasion of Plaintiff's privacy. (*See id*.) Defendant contends that Plaintiff has not established "good cause" under Rule 16(b)(4) because she "has been aware since before the filing of the Complaint that she would allege that Ms. Hurtado accompanied her into the examination room." (Doc. 22 at 4.)

Allowing parties to amend based on information obtained through discovery is common and well established. *See Fru-Con Constr. Corp. v. Sacramento Mun. Util. Dist*., No. 05-0583, 2006 WL 3733815, at *3–5 (E.D. Cal. Dec. 15, 2006) (collecting cases in which court granted leave to amend based on "new information revealed through discovery"); *see also Macias v. City of Clovis*, No. 1:13-cv-01819-BAM, 2016 WL 1162637, at *4 (E.D. Cal. Mar. 24, 2016) ("[D]iscovery of new evidence is often sufficient to satisfy the good cause standard" under Rule 16(b).). In general, the focus of the diligence inquiry under Rule 16(b) is the time between the

---

[3] Ms. Hurtado is the individual identified as "Elizabeth" in Plaintiff's original complaint. (*See* Doc. 21 at 3.)

5

moving party's discovery of new facts and its asking leave of the court to file an amended pleading. *See Zivkovic*, 302 F.3d at 1087–88.

It is undisputed that Plaintiff received Defendant's responses to her requests for admission on February 12, 2021. In its responses, Defendant denied that it required Ms. Hurtado to accompany Plaintiff into the examination room, thereby suggesting that the alleged conduct took place outside the scope of Ms. Hurtado's employment by Defendant.[4] *See, e.g., Tognazzini v. San Luis Coastal Unified Sch. Dist.,* 86 Cal. App. 4th 1053, 1058 (2001) (in determining whether employee's alleged tortious conduct was committed outside the scope of their employment, "the trier of fact considers . . . whether [the conduct] was authorized or directed by the employer.") While both the identity of Ms. Hurtado and the factual basis for an invasion of privacy claim may have been known to Plaintiff prior to filing her complaint, the basis for a claim that could be asserted against Ms. Hurtado *individually*, as opposed to against Defendant, was not known until February 12, 2021. Plaintiff then filed the instant Motion less than a month later, after meeting and conferring with defense counsel in an attempt to reach an agreement on the amendment. (*See* Doc. 22-1 ¶¶ 6–7.)

Based on the above, the undersigned finds that Plaintiff did not delay in seeking amendment and has therefore shown "good cause" under Rule 16(b) to modify the scheduling order for the purpose of seeking to amend the complaint. *See, e.g., Nucal Foods, Inc. v. Quality Egg LLC,* No. CIV S–10–3105–KJM–CKD, 2012 WL 260078, at *5 (E.D. Cal. Jan. 27, 2012) ("Because plaintiff moves to amend [its] complaint based on facts uncovered during discovery, the court finds that plaintiff has good cause to seek leave to amend. Plaintiff could not have exercised a greater degree of diligence in order to amend at an earlier state in litigation.") (internal citations omitted); *AZ Holding, L.L.C. v. Frederick*, No. CV–08–0276, 2009 WL 3063314, at *3 (D. Ariz. Sept. 22, 2009) (finding plaintiff reasonably diligent when seeking leave one month after incident); *Fru-Con Const. Corp.*, 2006 WL 3733815, at *4 (finding that the defendant "acted with reasonable diligence" in moving for leave to amend its counterclaim "roughly two months" after

---

[4] Defendant disputes that Ms. Hurtado "acted on her own." (*See* Doc. 29 at 5.) However, whether Ms. Hurtado was acting within or outside the scope of her employment, or with or without Plaintiff's consent, is an issue for the trier of fact and is not germane to the resolution of the instant Motion.

6

learning new facts at the deposition).

**B.    Plaintiff May Amend the Complaint to Join a Non-Diverse Defendant**

As part of its amendment, Plaintiff seeks to join as a defendant Elizabeth Hurtado, whom neither party disputes is a citizen of California. (*See* Doc. 26 at 3; Doc. 29 at 9.) Defendant opposes the addition of Ms. Hurtado, whose joinder would destroy diversity and require remand under 28 U.S.C. § 1447 ("section 1447").[5] (*See* Doc. 29.)

**1.    Legal Standard**

"[T]he proper standard for deciding whether to allow post-removal joinder of a diversity-destroying defendant is set forth in 28 U.S.C. 1447(e)." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 n.2 (C.D. Cal. 2002) (citations omitted); *see also Hardin v. Wal-Mart Stores, Inc.*, 813 F. Supp. 2d 1167, 1173 (E.D. Cal. 2011) ("Plaintiffs may not circumvent 28 U.S.C. § 1447(e) by relying on Fed .R. Civ. P. 15(a) to join non-diverse parties.") (citing *Clinco v. Roberts*, 41 F. Supp. 2d 1080, 1086 (C.D. Cal. 1999)). Section 1447(e) states: "If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court." 28 U.S.C. 1447(e).

Section 1447(e) is "couched in permissive terms" and "clearly gives" district courts discretion in deciding whether to permit or deny joinder of a non-diverse defendant. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998); *see also IBC Aviation Servs., Inc. v. Compania Mexicana de Aviacion, S.A. de C.V.*, 125 F. Supp. 2d 1008, 1011 (N.D. Cal. 2000) ("Under 1447, whether to permit joinder of a party that will destroy diversity remains in the sound discretion of the court."). In deciding whether to deny or permit joinder under 1447(e), courts typically analyze the following six factors:

> (1) [W]hether the party sought to be joined is needed for just adjudication and would be joined under Federal Rule of Civil Procedure 19(a); (2) whether the statute of limitations would preclude an original action against the new defendants in state court; (3) whether there has been unexplained delay in requesting joinder; (4) whether joinder is intended solely to defeat federal

---

[5] Neither the Motion nor Defendant's opposition referenced section 1447, instead relying on Federal Rule of Civil Procedure 15(a). (*See* Docs. 21 & 22.) The Court ordered supplemental briefing regarding whether Plaintiff should be permitted to amend her complaint to add Ms. Hurtado as a defendant under section 1447(e) and whether the case should be remanded to state court should the Court grant the Motion. (*See* Doc. 25.)

>jurisdiction; (5) whether the claims against the new defendant appear valid; and (6) whether denial of joinder will prejudice the plaintiff.

*IBC Aviation*, 125 F. Supp. 2d at 1011 (internal citations omitted).  The undersigned will address each of these factors below.

**2.    Analysis**

**a.    Just Adjudication and Rule 19(a)**

Federal Rule of Civil Procedure 19 "requires joinder of persons whose absence would preclude the grant of complete relief, or whose absence would impede their ability to protect their interests or would subject any of the parties to the danger of inconsistent obligations." *Clinco*, 41 F. Supp. 2d at 1082 (citing Fed. R. Civ. P. 19(a)).  This standard is generally met "when failure to join will lead to separate and redundant actions," but not when the defendants whose joinder is sought "are only tangentially related to the cause of action or would not prevent complete relief." *Boon*, 229 F. Supp. 2d at 1022.  "Although courts consider whether a party would meet [Rule] 19's standard for a necessary party, amendment under § 1447(e) is a less restrictive standard than for joinder under [Rule] 19." *IBC Aviation,* 125 F. Supp. 2d at 1011–12 (citations omitted).

Plaintiff contends that Ms. Hurtado is necessary under Rule 19 because the events that led to Plaintiff's wrongful termination "included acts from [Ms.] Hurtado," and if she is not added as a defendant in the action, Plaintiff "will be required to file a separate action in state court based on the same events and occurrences." (Doc. 26 at 4–5.)  Defendant acknowledges that denying the Motion may lead to a separate action, but it contends it is not redundant because the invasion of privacy claim "is not an employment related claim like the other five Causes of Action." (Doc. 29 at 7.)

The fact that, unlike her other claims, Plaintiff's proposed invasion of privacy claim sounds in tort does not detract from the fact that it arises out of the same operative events as the other claims. *See  Self v. Equinox Holdings, Inc.*, Case No. CV 14-04241 MMM (AJWx), 2015 WL 13298146, at *10 n.91 (C.D. Cal. Jan. 5, 2015)  (The "relevant inquiry" for purposes of section 1447(e) is whether the party to be joined was "directly involved in the events underlying

[the plaintiff's] claims."). If the Motion were to be denied, Plaintiff would be forced to litigate parallel lawsuits in separate forms involving the same documents and witnesses and many of the same factual and legal issues, which would directly frustrate the main purpose of Rule 19 and unnecessarily tax judicial resources. *See CP Nat'l Corp. v. Bonneville Power Admin.*, 928 F.2d 905, 912 (9th Cir. 1991) (explaining that Rule 19 was designed to prevent "wasteful litigation"); *Palestini v. General Dynamics Corp.*, 193 F.R.D. 654, 658 (S.D. Cal. 2000). *See also IBC Aviation*, 125 F. Supp. 2d at 1013 (Redundant litigation arises out of the same facts and involves the same legal issues.).

Under these circumstances, and in light of the "less restrictive standard" for amendment under section 1447(e) than for joinder under Rule 19, the undersigned finds that the inclusion of Ms. Hurtado in the lawsuit would lead to a just adjudication of the entire dispute. *See, e.g., Avellanet v. FCA US LLC*, Case No. CV 19-7621-JFW(KSx), 2019 WL 5448199, at *2 (C.D. Cal. Oct. 24, 2019) (concluding that "failure to join Fiat would lead to separate and redundant actions, and that Fiat is necessary for the efficient and just adjudication of this action," because plaintiff's "claims for relief against FCA and Fiat arise out of the same vehicle and the same alleged defects in that vehicle, and resolution of Plaintiff's claim against Fiat will require many of the same documents and witnesses and will implicate many of the same factual and legal issues"). This factor weighs in favor of granting the Motion.

### b. Statute of Limitations

Both parties agree that the statute of limitations would not bar Plaintiff from bringing suit against Ms. Hurtado in a separate action, as California has a two-year statute of limitations on actions for invasion of privacy by means of intrusion into private affairs. *See* Cal. Code Civ. Proc. § 335.1; *Quan v. Smithkline Beecham Corp.*, 149 F. App'x 668, 670 (9th Cir. 2005). Thus, the second factor favors denying the Motion. *See Clinco*, 41 F. Supp. 2d at 1083 ("[Plaintiff] does not argue that a new action against [the proposed defendant] would be time-barred. Therefore, this factor does not support amendment.").

### c. Unexplained Delay

Defendant contends that Plaintiff "clearly had an understanding of Ms. Hurtado's alleged

involvement as it related to the intrusion claim as far back as February 2020," yet waited over a year later to seek to amend its complaint. (*See* Doc. 29 at 5–6.) Defendant also points out that Plaintiff did not allege an invasion of privacy claim against it in her original complaint. (*Id*. at 3, 6.) This, Defendant asserts, belies Plaintiff's reliance on Defendant's responses to requests for admission as the basis for the amendment.

As forth above, however, the undersigned finds that Plaintiff did not unduly delay in seeking to join Ms. Hurtado as a defendant based on the information she gained during discovery. (*See* Section III.A.2, *supra*.) Plaintiff filed the instant Motion less than a month after learning of the basis of her individual claim against Ms. Hurtado, after having met and conferred with Defendant. This timeline evidences no unexplained delay. Defendant's contention that Plaintiff did not act diligently in seeking amendment would be compelling were she seeking to add an invasion of privacy claim against *Defendant*, but she has apparently abandoned that intention. (*See* Section II.B n2, *supra*.) Thus, this factor weighs in favor granting the Motion.

### d. Plaintiff's Motive

Though Plaintiff's motive is relevant, "[s]uspicion of diversity destroying amendments is not as important now that § 1447(e) gives courts more flexibility in dealing with the addition of such defendants." *IBC Aviation*, 125 F. Supp. 2d at 1012; *see also Trotman v. United Parcel Serv.*, No. C–96–1168–VRW, 1996 WL 428333, at *1 (N.D. Cal. July 16, 1996) ("The legislative history to 1447(e) also suggests that it was intended to undermine the doctrine employed by some courts that amendments which destroyed diversity were to be viewed with suspicion."). The district court should "decline[ ] to impute an improper motive to Plaintiff simply because Plaintiff seeks to add a non-diverse defendant post-removal." *Id*.

Defendant contends that Plaintiff's unexplained delay in seeking amendment renders it "likely" that Plaintiff that seeks to join Ms. Hurtado "solely for the purpose of defeating federal subject matter jurisdiction." (Doc. 29 at 6–7.) Such inference is belied by the record. The record shows that Plaintiff first learned essential facts about Ms. Hurtado's potential liability on February 12, 2020, and filed the Motion less than a month later. More importantly, the Motion demonstrates that Plaintiff believed the joining of Ms. Hurtado would not deprive this Court of

10

jurisdiction, as her proposed amended complaint included a "stipulation" to "have this matter heard in the United States District Court for the Eastern District of California."[6] (Doc. 21 at 13 ¶ 18.) Only when the undersigned pointed out that the joinder of Ms. Hurtado would likely destroy diversity jurisdiction and that section 1447(e)—not Rule 15(a)—applied to the Motion does it appear that *either* party contemplated the possibility of remand. Thus, this factor also favors joinder.

### e. Apparent Validity of Plaintiff's Claim

As construed, Plaintiff seeks to amend her complaint to add a claim of invasion of privacy by means of intrusion into private affairs against Ms. Hurtado. (*See* Section II.B n2, *supra*.) Defendant asserts that Plaintiff "will not be able to prove any conduct by Defendant or Ms. Hurtado was highly offensive to a reasonable person." (Doc. 29 at 8.) The relevant inquiry, however, is not whether Plaintiff will be able to adduce evidence so as to ultimately prevail on her claim. Instead, under section 1447(e), the undersigned need only determine whether the claim "seems valid." *See Hardin*, 813 F. Supp. 2d. at 1174; *IBC Aviation Servs., Inc.*, 125 F. Supp. 2d 1012–13. *See also Plasse v. Ford*, No. 2:17–cv–01136–TLN–EFB, 2017 WL 6033075, at *5 (E.D. Cal. Dec. 6, 2017) (When evaluating this factor, courts "'need only determine whether the claim seems valid,' which is not the same as the standard in either a motion to dismiss or a motion for summary judgment.") (citations omitted).

Applying the proper standard, the undersigned determines that the invasion of privacy claim against Ms. Hurtado seems valid. Plaintiff has alleged the necessary elements of the claim under California law, *i.e.*, that Plaintiff had a "reasonable expectation of privacy in her medical examination room following her work accident," that Ms. Hurtado "intentionally intruded in Plaintiff's medical room to ensure that a drug test was administered prior to Plaintiff receiving medical assistance," and such intrusion "would be highly offensive to a reasonable person in Plaintiff's position," *see* Doc. 21 at 22. *See People v. Bollaert*, 248 Cal. App. 4th 699, 712 (2016) ("A privacy violation based on the common law tort of intrusion has two elements. First, the

---

[6] It is well established, however, that "parties cannot . . . create federal court subject matter jurisdiction by stipulation." *Holman v. Laulo–Rowe Agency*, 994 F.2d 666, 668 n.1 (9th Cir. 1993) (citing *Neirbo Company v. Bethlehem Shipbuilding Corp.*, 308 U.S. 165 (1939)).

defendant must intentionally intrude into a place, conversation, or matter as to which the plaintiff has a reasonable expectation of privacy. Second, the intrusion must occur in a manner highly offensive to a reasonable person.") (quoting *Hernandez v. Hillsides, Inc.*, 47 Cal. 4th 272, 286, (2009)). Because Plaintiff has articulated a seemingly valid claim against the non-diverse defendant, this factor weighs in favor of granting the Motion. *See Taylor v. Honeywell Corp.*, No. C 09–4947 SBA, 2010 WL 1881459, at *3 (N.D. Cal. May 10, 2010) ("The existence of a facially legitimate claim against the putative defendant weighs in favor of permitting joinder under section 1447(e)").

### f.  Whether Denial of Joinder Will Prejudice Plaintiff

Plaintiff asserts that if the Motion is denied, prejudice would result because she would be forced to initiate a separate, redundant lawsuit against Ms. Hurtado in state court for the same events and occurrences concerning Plaintiff's suit against Defendant. (Doc. 26 at 8–9.) The undersigned agrees. In *Taylor v. Honeywell Corp.*, the court found that denying the plaintiffs' motion would be "unduly prejudicial to Plaintiffs because it would require them either to abandon the potential claims [they have] against [the proposed defendants] or litigate the same legal issues and facts as this case in state court." 2010 WL 1881459, at *4. Because such duplicative and redundant litigation would "result in a waste of judicial and the Plaintiffs' resources, as well as risk inconsistent results," the *Taylor* court found that the final factor favored granting the plaintiffs' motion to amend and to remand. *Id*.

As in *Taylor*, precluding Plaintiff from joining Ms. Hurtado in this case would prejudice Plaintiff because she would be required either to abandon potentially viable claims against Ms. Hurtado or to initiate a duplicative litigation in state court. Defendant counters that any "slight" prejudice that would result from denial of the Motion is of Plaintiff's own making by "fail[ing] failure to recognize and plead any potential claims in a reasonable time period." (*See* Doc. 20 at 17.) However, this is the same argument advanced by Defendant with respect to other factors, which the undersigned has rejected. Thus, this last factor favors joinder.

### IV.  CONCLUSION AND ORDER

As set forth above, five of the six factors weigh in favor of allowing joinder of Ms.

12

Hurtado as a defendant. The undersigned concludes that Plaintiff should be allowed to amend her complaint despite the fact that the pleading destroys diversity, having shown "good cause" under Fed. R. Civ. P. 16(b)(4) for the untimely amendment.

Accordingly, the undersigned hereby **RECOMMENDS** that Plaintiff's "motion for leave to amend complaint" (Doc. 21) be **GRANTED** and Plaintiff be directed to file forthwith an amended complaint that joins Elizabeth Hurtado as a defendant and adds a claim against her for invasion of privacy by means of intrusion into private affairs.

Because the amended pleading joins a defendant whose presence in this litigation destroys the diversity on which this Court's jurisdiction rests, upon its filing this Court would no longer have subject matter jurisdiction under 28 U.S.C. § 1332. The undersigned further **RECOMMENDS** that, upon filing of the amended complaint, this case be **REMANDED** to the Superior Court of California, County of Fresno.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l)(B). **Within twenty-one (21) days** after being served with these Findings and Recommendations, a party may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:  **June 9, 2021**                                /s/ *Sheila K. Oberto*
                                                                UNITED STATES MAGISTRATE JUDGE